**Opinion issued June 15, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00424-CV

————————————

## IN RE COMMITMENT OF THOMAS LYNN ATCHISON

On Appeal from the 176th District Court
Harris County, Texas
Trial Court Case No. 0551298Z

## MEMORANDUM OPINION

This is a civil commitment action under the Texas Civil Commitment of Sexually Violent Predators Act (SVP Act). *See* TEX. HEALTH & SAFETY CODE §§ 841.001–.153. A jury unanimously found, beyond a reasonable doubt, that appellant Thomas Lynn Atchison is a sexually violent predator. The trial court signed a final judgment and commitment order committing Atchison to involuntary

treatment and supervision upon his release from prison on parole. In three issues, Atchison contends that (1) the evidence is legally insufficient to support the "behavioral abnormality" element of the State's case, (2) the evidence is factually insufficient to support the "behavioral abnormality" element of the State's case, and (3) the trial court erred in excluding evidence that Atchison would be placed in an assisted living facility upon his release from prison on parole.

We affirm the trial court's judgment and order of civil commitment.

## Background

In August 1991, a jury found Atchison guilty of aggravated sexual assault of a child. After finding a felony enhancement paragraph true, the trial court sentenced Atchison to forty years' confinement.

In July 2021, after Atchison had served thirty years of his sentence and prior to his release on parole, the State petitioned to have him declared a sexually violent predator subject to civil commitment under the SVP Act. *See id*. § 841.081. The case proceeded to trial and the jury heard from two witnesses: Atchison and the State's expert, Dr. Darrel Turner.

### A. Atchison

Atchison was seventy-five years old at the time of trial. He testified that he had a history of committing sex offenses against children, but he could not

remember the first time he had sexual contact with a child or with how many children he had sexual contact.

Atchison recalled that he was convicted for exposing his genitals to a thirteen-year-old girl in 1969, and that he received probation for that offense.

He testified that he took two boys to a construction site and that he probably fondled the boys' penises and had them fondle his genitals. Atchison testified that he remembered having one of the boys perform oral sex on him. He stated that he probably left the boys at the site and recalled shooting a gun in the air which he characterized as "utter stupidity" because discharging the gun resulted in the police responding immediately. Atchison was convicted of fondling the boys.

In 1972, Atchison received two convictions for sodomy and was sentenced to ten years' confinement. He testified that if he had convictions for sodomy against two boys, then he probably committed the offenses. Atchison testified that he knew he had a problem with committing sex offenses against children when he went to prison.

In 1976, after serving four years of his ten-year sentence, Atchison was released on parole and moved home with his wife and seven-year-old daughter. He testified that he began receiving Depo-Provera shots that "gave [him] control over [his] actions," and that he continued taking the shots for many years until his

3

doctor moved to California. He testified that, for a while, he did not have sexual contact with children.

In 1982, Atchison was arrested for driving while intoxicated (DWI) and received probation. He testified that the DWI was "probably one of many" but he did not remember it. Atchison testified that he has an addiction to alcohol.

In June 1989, Atchison was charged with sexually assaulting a nine-year-old boy who was his younger daughter's friend. Atchison testified that he engaged in anal sex with the boy when no one else was at home, and that he did so despite being aware of the risk that he could return to prison for his behavior. Atchison denied taking nude photographs of the boy. He testified that he was not sexually attracted to the boy but that he engaged in anal sex with him after the boy French-kissed him.

Atchison testified that while he was being investigated for engaging in anal sex with the boy, he was also being investigated for committing an offense against a fourteen-year-old boy who was his son's friend and who worked for Atchison during the summer. Atchison testified that the boy invited Atchison to perform oral sex on him, so he did.

In 1991, a jury found Atchison guilty of aggravated sexual assault of the nine-year-old boy and he was sentenced to forty years' imprisonment. In 1994, while in prison, Atchison read in a local newspaper about a five-year-old boy

whose family had incurred medical expenses to pay for the boy's surgery. Atchison testified that he sent the family a donation and may have written a letter to the boy. He testified that he tried to add the boy's name to his visitation list, but the boy's parents asked that their son's name be removed. In 2006, Atchison wrote another letter to the boy who was by then seventeen years old and graduating from high school.

Atchison's older daughter was deposed as part of the civil commitment action. Atchison denied sexually abusing his daughter or son. When asked if he had any reason to dispute his daughter's testimony that he sexually assaulted her and her brother, he responded that he did not remember it if it had happened.

Atchison testified that he did not believe that he was at risk to reoffend sexually. He testified that he would make sure that there were always at least two adults with him so that no one could allege that he had had sexual contact with a child. Atchison testified that he would "much rather die at a living assisted facility in Schulenburg than in the death camp at Littlefield."[1] The State objected, and the trial court sustained the objection.

Atchison has cataracts, Type 2 diabetes, heart issues, and hearing difficulties. His wife visited him while he was in prison until her death several years ago, and he has remained in contact with his two daughters. Atchison did not

---

[1] The Civil Commitment Center is in Littlefield, Texas.

know why he committed sexual offenses against children. He stated that it was obvious that he was sexually attracted to children and that he was out of control when he committed the sex offenses against them.

Atchison testified that the last time he was written up for a disciplinary infraction was for his involvement in a prison fight in 2017. He accepts responsibility for the harm he caused the children he sexually assaulted. He testified that he is no longer on Depa-Provera and that he is impotent.

## B.    Dr. Darrel Turner

Dr. Turner, a psychologist, evaluated Atchison and testified that it is his opinion that Atchison suffers from a behavioral abnormality that predisposes him to engage in sexually violent acts. Dr. Turner has a bachelor's degree in psychology, a master's degree in counseling psychology, and a doctorate in clinical psychology with a focus in forensic psychology. He completed a predoctoral internship with the Federal Bureau of Prisons and worked as a staff psychologist at a United States federal penitentiary in Pollock, Louisiana. Dr. Turner is licensed in Texas and Louisiana.

Dr. Turner's methodology for conducting a behavioral abnormality evaluation consists of a review of the individual's records (court documents, police investigative documents, statements from the individual and victims, medical records, prison records, and criminal history information), a face-to-face interview

6

and evaluation, and testing, from which he then compiles all the information to form an ultimate opinion, if possible. He testified that he also used research related to sexual recidivism and reviewed the depositions of Atchison and his daughter in forming his opinion in this case.

## 1. Sexual Offending History

According to the records, Atchison's mother reported that Atchison began engaging in sexual activity with other boys his age when he was nine years old. When Atchison was eighteen years old, he exposed his genitals to his niece who was considerably younger than him. Atchison's family placed him in treatment at that time.

In November 1969, when Atchison was twenty-five years old, he exposed himself to a thirteen-year-old female in Houston. He was later arrested and received probation for the offense which was subsequently revoked.

In December 1969, while on probation, Atchison exposed himself to a group of girls in Austin.

In January 1972, Atchison picked up a twelve-year-old boy who was hitchhiking and forced him to engage in oral sex.

In June 1972, Atchison approached a nine-year old girl and her friends. Using his gun to stop them, he made the girl pull her pants down, masturbated in front of the children, and wiped his semen onto the girl.

In 1972, on New Year's Day, Atchison attempted several times to abduct children at gunpoint. On the first occasion, Atchison flashed his gun at a ten-year-old girl riding her bike to coax her into his vehicle. The girl screamed and ran away. Later that same day, Atchison approached two boys, ages nine and eleven, playing at a construction site. He used his gun to threaten them and get them inside his truck. He then took them to a remote location where he performed various sex acts on them. Atchison made the boys fondle each other as well as perform oral sex on him and each other. When the boys tried to get back into the truck, Atchison shot his gun into the air, told them to stay away, and left them. Atchison confessed to the offenses and to using a gun.

Atchison was sentenced to ten years' imprisonment for fondling the two boys and sodomizing two other boys. The offenses committed in 1972 occurred while he was on probation for exposing himself to the thirteen-year-old girl in 1969.

Dr. Turner described Atchison as a prolific sex offender who appeared to often engage in "trolling," which he defined as driving aimlessly looking for potential victims. Dr. Turner noted several risk factors present with Atchison, including the degree of violence he used to obtain the children's compliance, the prepubescent age of the victims, the fact that there were multiple children, and that several of the offenses occurred on the same day. He also stated that research has

consistently shown that male sex offenders who offend against male children are more likely to reoffend, and that offenders who offend against victims they do not know, such as in this case, are at a higher risk of reoffending. According to Dr. Turner, the fact that Atchison offended against both male and female children means that his "victim pool" in not limited by gender. He further noted that Atchison approached the children in public places which suggested that Atchison was willing to act out despite the fact that he was more likely to be caught.

During a psychiatric evaluation in 1972, Atchison admitted that he was relieved to be going to prison because he could not lose control and molest children there. After he was released on parole, Atchison was prescribed Depo-Provera, a chemical castration drug that blocks hormones and limits sex drive. Although Atchison received no convictions while he was taking the drug, his daughter reported that he sexually molested her during that time. Atchison received two DWIs and an assault charge while on parole.

In 1991, Atchison was convicted of sexually assaulting an eight-year-old boy who was a friend of one of his children. The records showed that the sexual abuse went on for several years while the boy was between the ages of five and eight. One of Atchison's daughters said she saw her father take nude photos of the boy. Atchison was sentenced to forty years' imprisonment for the offense. The

records showed that Atchison admitted in his deposition to also performing oral sex on a fourteen-year-old boy who was his son's friend.

## 2. Risk Factors

Dr. Turner explained that there are research-based risk factors which show whether a sex offender is at a higher risk of reoffending sexually than the average sex offender for whom the factors are not present. The three main categories of risk factors in a behavioral abnormality evaluation are antisociality, sexually deviant interests, and recidivism, or a history of continuing to act out after getting in trouble and/or being incarcerated for sex offenses.

Dr. Turner explained that antisocial people are "out for themselves" and have no regard for the well-being or welfare of others. They tend to be pathological liars and manipulative, have problems with authority, and often engage in criminal activities.

A sexually deviant interest is a sexual attraction to either a particular type of person, such as a child, or a particular activity during sex, such as violence, that requires creating a victim to satisfy the particular sexual interest. Dr. Turner testified that Atchison's sexual offending history against children is sexually deviant.

Dr. Turner testified that Atchison is a sexual recidivist because he was caught, convicted, and punished for the sex offenses he committed and later committed additional sex offenses while on supervised release.

### 3. Protective Factors

Dr. Turner explained that there are protective factors which, if present, can either lower an offender's likelihood of reoffending sexually or prevent it from increasing. Dr. Turner testified that it was a positive factor that Atchison did not receive any sexual misconduct disciplinaries while in prison. Atchison's protective factors include his age, family connections, job history, and a lack of substance abuse related to the offense for which he is incarcerated.

### 4. Diagnoses

Dr. Turner diagnosed Atchison with pedophilic disorder, non-exclusive type, attracted to both males and females, and male and female children. He also gave Atchison a provisional diagnosis of antisocial personality disorder. A provisional diagnosis is one the evaluator believes probably exists, but the evidence is insufficient to make a full diagnosis. Dr. Turner stated that, with additional information, another psychologist or psychiatrist can address the diagnosis more fully. Dr. Turner testified that there was clear evidence in Atchison's records that he vacillates between admitting and denying various offenses, lies pathologically, and is willing to victimize others to satisfy his own desires.

In addition to pedophilic disorder, Dr. Turner diagnosed Atchison with an unspecified paraphilic disorder with features of exhibitionism and sadism. Atchison's insistence that at least some of the children wanted to engage in sexual contact with him and his attributing sexual desires to children is strong evidence of Atchison's pedophilia. Dr. Turner testified that Atchison's pedophilia is a congenital or acquired condition that affects his emotional or volitional capacity and is not something that goes away. The evidence showed that Atchison also attempted to contact young boys while incarcerated in prison.

Dr. Turner also diagnosed Atchison with alcohol use disorder in sustained full remission. He testified that, by Atchison's own admission, he had a history of heavy daily drinking and blacking out which resulted in DWIs. There was no indication that Atchison had consumed alcohol while in prison. Dr. Turner did not diagnose Atchison with dementia. According to a 2021 evaluation by the Texas Department of Criminal Justice, Atchison showed signs only of normal aging and not dementia. Dr. Turner stated that dementia is a serious mental illness and, if present, is actually a risk factor that increases the likelihood of sexually reoffending.

## 5. Test Results

Dr. Turner used the Psychopathy Checklist-Revised (PCL-R) to evaluate the degree of Atchison's psychopathic traits. The maximum score on the PCL-R is 40.

12

Atchison initially received a score of 23 because Dr. Turner had only a small percentage of Atchison's records. After Dr. Turner received the rest of the data, Atchison scored a 28. A score in the range of 26 to 30 indicates a high degree of psychopathy. Dr. Turner testified that it is rare for a child molester and someone of Atchison's age to score so high.

Dr. Turner used the Static-99R, an actuarial instrument, to assess Atchison's level of risk. After receiving a three-point credit for his advanced age, Atchison scored a 6 out of a possible 12, which places him in the highest risk category. A 2 is the average score so Atchison's score of 6 indicates that he is statistically three times more likely to be convicted of reoffending than the average sex offender.

### 6. Institutional Adjustment

Dr. Turner described Atchison's institutional adjustment, i.e., how well an individual behaves while incarcerated, as fairly poor. Atchison had thirty disciplinary infractions and seventeen of them were major infractions, which included contacting young boys and attempting to send money to a children's organization while in prison which resulted in his removal from the prison unit. Atchison was placed in administrative segregation for fighting. Dr. Turner does not fault an inmate for fighting to a certain degree, especially if he is a sex offender, because he must fight to survive. Dr. Turner stated, however, that Atchison seemed to have more fights than most child molesters in prison.

## 7. Behavioral Abnormality

Dr. Turner opined that Atchison suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. Atchison has not received any sex offender treatment while in prison. According to Dr. Turner, Atchison perceives no danger or risk of his reoffending.

## Sufficiency of the Evidence

In his first and second issues, Atchison contends that the evidence is legally and factually insufficient to support the "behavioral abnormality" element of the State's case.

## A. Standard of Review and Applicable Law

A commitment proceeding under the SVP Act is a civil proceeding that incorporates the standard of proof "beyond a reasonable doubt" typically reserved for criminal cases. *In re Commitment of Stoddard*, 619 S.W3d 665, 674 (Tex. 2020) (explaining that proceeding under SVP Act is "rare civil case in which the burden of proof is beyond a reasonable doubt"). Thus, in reviewing verdicts in SVP cases for legal sufficiency of the evidence, we use the appellate standard of review applied in criminal cases. *Id.*; *see also In re Commitment of Summers*, No. 01-19-00738-CV, 2021 WL 3776751, at *11 (Tex. App.—Houston [1st Dist.] Aug. 26, 2021, no pet.) (mem. op.).

Under the legal sufficiency standard in criminal cases, we assess the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the SVP Act. *In re Commitment of Stoddard*, 619 S.W.3d at 675; *see also In re Commitment of Summers*, 2021 WL 3776751, at *11. "It is the fact finder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts." *In re Commitment of Summers*, 2021 WL 3776751, at *11 (quoting *In re Commitment of Stuteville*, 463 S.W.3d 543, 544 (Tex. App.—Houston [1st Dist.] 2015, pet. denied)); *In re Commitment of Mullens*, 92 S.W.3d 881, 887 (Tex. App.—Beaumont 2002, pet. denied) (stating fact finder may resolve conflicts and contradictions in evidence "by believing all, part, or none of the witnesses' testimony").

In evaluating a factual sufficiency challenge to the evidence, we must "determine whether, on the entire record, a reasonable factfinder could find beyond a reasonable doubt that the defendant is a [sexually violent predator]." *In re Commitment of Stoddard*, 619 S.W.3d at 668. The assumption that the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so remains. *Id.* at 674. However, rather than "disregard" disputed evidence that a reasonable factfinder could not have credited in favor of the finding, the court

must determine whether, in light of the entire record, that evidence "is so significant that a factfinder could not reasonably have formed a firm belief or conviction" that the finding was true. *Id.* In a SVP case where the burden of proof is beyond a reasonable doubt, the evidence is factually insufficient if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the SVP finding, along with the undisputed facts that do not support the finding, is so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met. *Id.* at 675.

In a SVP civil commitment case, the State must prove beyond a reasonable doubt that a person is a sexually violent predator. *See* Tex. Health & Safety Code § 841.062(a). A person is a "sexually violent predator" if he is a repeat sexually violent offender and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id*. § 841.003(a). A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id*. § 841.002(2).

## B. Legal Sufficiency

Atchison argues that the evidence is legally insufficient to support the "behavioral abnormality" element of the State's case "because the Legislature did

not intend for Chapter 841 to apply to an 'infirm' 75-year-old man who scored less than a '30' on the PCL-R and who would be placed in an assisted living facility upon his release from prison on parole after serving most of a lengthy prison sentence." He asserts that the case law sheds little light on what the "behavioral abnormality" element means and, therefore, resolution of this question requires a judicial construction of the "behavioral abnormality" element according to traditional rules of statutory construction. He argues that, under these traditional rules, this Court should consider the Legislature's findings that Chapter 841 is intended to apply to "a small but extremely dangerous group of sexually violent predators." *Id.* § 841.001.

The Texas Supreme Court has clarified that the two statutory elements—repeat sexually violent predator and behavioral abnormality—are the only factors courts should consider in a sufficiency review. *See In re Commitment of Stoddard*, 619 S.W.3d at 676–678. It explained that the "'small but extremely dangerous group' language, contained in the Act's legislative findings, is not part of the statute's definition of 'sexually violent predator' and [is] not an element the jury [is] required to find." *Id.* at 677 (concluding appeals court erred in finding evidence insufficient where it found, among other things, that appellant was not part of small but extremely dangerous group referenced in legislative findings). Other courts, including this one, have rejected similar arguments. *See, e.g.*, *In re Commitment of*

17

*Summers*, 2021 WL 3776751, at \*14 (summarily dismissing request to consider whether appellant was part of "small but extremely dangerous group" mentioned in legislative findings in light of holding in *In re Commitment of Stoddard*); *see also In re Commitment of Tryon*, 654 S.W.3d 29, 38 (Tex. App.—Eastland 2022, pet. denied) (noting "*Stoddard* has clearly foreclosed" argument that "behavioral abnormality" element must be construed as incorporating Act's legislative findings and legislative history); *In re Commitment of Ausbie*, No. 14-18-00167-CV, 2021 WL 1972407, at \*11 (Tex. App.—Houston [14th Dist.] May 18, 2021, pet. denied) (mem. op.) (declining request, in light of *In re Commitment of Stoddard*, to examine legislative history to construe intended meaning of "behavioral abnormality"). We likewise conclude that Atchison's argument that the evidence is legally insufficient to support a finding that he meets the legislatively intended definition of "behavioral abnormality" is foreclosed by *Stoddard*.

Aside from his argument addressed above, Atchison does not contest the sufficiency of the evidence to support the second element of "behavioral abnormality," as statutorily defined. *See* TEX. HEALTH & SAFETY CODE § 841.002(2). However, even if he had, we conclude that the evidence was legally sufficient to support the jury's finding that Atchison suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id*. § 841.003(a)(2). At the time of trial, Atchison was serving a forty-year sentence

18

for aggravated sexual assault of a child. The jury heard evidence that Atchison had a previous conviction for fondling and two convictions for sodomy. All these offenses are defined as sexually violent offenses under Texas Health and Safety Code section 841.002(8). *See id.* § 841.002(8) (defining sexually violent offenses to include Texas Penal Code sections 22.021 (aggravated sexual assault of child), 21.11(c) (indecency with child), and 22.011 (sexual assault)). Dr. Turner testified that Atchison's pedophilia is a congenital or acquired condition that affects his emotional or volitional capacity, and it is not something that ever goes away. He opined that Atchison "suffers from a behavioral abnormality that predisposes him to engage in predatory acts of sexual violence."

Viewing the evidence in the light most favorable to the verdict, we conclude that the jury could have found, beyond a reasonable doubt, that Atchison is a sexually violent predator under the SVP Act. *See In re Commitment of Stoddard*, 619 S.W.3d at 675.

We overrule Atchison's first issue.

## C. Factual Sufficiency

In his second issue, Atchison contends that the evidence is factually insufficient to support the "behavioral abnormality" element of the State's case. He argues that Dr. Turner's opinion that Atchison is a "psychopath" and will

"probably" reoffend was largely based on an "antisocial personality disorder" diagnosis which the State could not prove.

Dr. Turner gave Atchison a provisional diagnosis of antisocial personality disorder, i.e., he believed that Atchison probably has the disorder, but the evidence was insufficient to make a full diagnosis. The State does not dispute that it did not prove that Atchison has antisocial personality disorder. Instead, it argues that the absence of such a diagnosis does not negate the behavioral abnormality element. We agree. While a medical diagnosis of a person's mental health may certainly inform an assessment of whether an individual has a behavioral abnormality, the principal issue in a commitment proceeding is not a person's mental health but whether he is predisposed to sexually violent conduct. *In re Commitment of Bohannan*, 388 S.W.3d 296, 306 (Tex. 2012). Dr. Turner testified that Atchison's records showed that he pathologically lied, specifically that Atchison vacillated between admitting and denying various offenses depending on the person to whom he was speaking, and that he engaged in criminal behavior against others to satisfy his own desires with no regard for the welfare of those he hurt.

We note that although the SVP Act mentions psychopathy, it does not require a finding of psychopathy. *See* TEX. HEALTH & SAFETY CODE § 841.023(a) (requiring initial evaluator to include test for psychopathy in evaluation). Dr. Turner opined, based on the PCL-R, that Atchison is a psychopath. After initially

20

scoring a 23, Atchison later scored a 28. A score in the range of 26 to 30 indicates a high degree of psychopathy. Dr. Turner testified that it is rare for a child molester and someone of Atchison's age to score so high on the instrument. The jury was free to accept or reject Dr. Turner's provisional diagnosis of antisocial personality disorder and his opinion that Atchison is a psychopath. *See Stoddard*, 691 S.W.3d at 668.

As for undisputed facts that do not support the verdict, Atchison's biggest protective factor is likely his age. However, even with a reduction of three points on his Static-99 score, Atchison still scored in the above-average risk level for reoffending. Thus, Atchison's age does not negate his behavioral abnormality.

In light of the entire record, we conclude that the disputed evidence that a reasonable factfinder could not have credited in favor of the SVP finding, along with the undisputed facts that do not support the finding, is not so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met. *See id.*

We overrule Atchison's second issue.

**Exclusion of Evidence**

In his third issue, Atchison contends that the trial court erred in excluding evidence that he would be placed in an assisted living facility upon his release from prison on parole because it was relevant to his "increased risk" of

reoffending. He argues that the exclusion of this evidence was probably harmful because it was non-cumulative and some of the most powerful evidence he had that was crucial to the only disputed issue in this case, i.e., the risk he poses to others.

In response to the prosecutor's question whether he believed that he had any risk to reoffend sexually, Atchison answered "no" and then added "I would much rather die at an assisted living facility in Schulenburg" than in the civil commitment center in Littlefield. Later, during cross-examination, Atchison's attorney asked him about future plans that he may have once he was paroled. The State objected on the grounds of relevancy and that the issue was also the subject of a pretrial ruling. Atchison's attorney argued that the State had opened the door to the testimony, and the State responded that it had not elicited the information. The trial court sustained the State's objection.

There is nothing in the record showing that Atchison was going to live at an assisted living facility. Rather, Atchison said he would rather go to an assisted living facility in Schulenburg than the civil commitment center in Littlefield. Outside the presence of the jury, Dr. Turner testified that the Colonial Care Center in Schulenburg was "suggested as a potential placement by the Parole Board."[2]

---

[2]    In an offer of proof, Dr. Turner said he had received documents from Colonial Care Center and visited its website. Dr. Turner did not believe the Center would be an appropriate placement for Atchison because it is a family-friendly place, and the Center's literature describes children and grandchildren visiting and children

Thus, the trial court did not err because there was no evidence that Atchison was, in fact, going to live in an assisted living facility upon his release from prison. We also note that where Atchison may live in the future is irrelevant to the behavioral abnormality question before the jury. *See In re Commitment of Smith*, No. 09-12-00189-CV, 2013 WL 476771, at *7 (Tex. App.—Beaumont Feb. 7, 2013, pet. denied) (mem. op.) (concluding that terms of intensive parole supervision for which appellant had been approved were not relevant to issue of behavioral abnormality question and thus trial court did not err in excluding them).

We overrule Atchison's third issue.

### Conclusion

We affirm the trial court's judgment and order of civil commitment.

Amparo Guerra
Justice

Panel consists of Justices Landau, Countiss, and Guerra.

Do Not Publish. TEX. R. APP. P. 47.2(b).

---

coming to the Center to sing. Dr. Turner stated that there was "far too much potential" for Atchison to be tempted to reoffend.

23